Next, 21-2982, United States v. Romano McCain Mr. Tamayo, you have three minutes reserved for rebuttal. Whenever you're ready, you may proceed. Thank you, Your Honor. My name is Peter Tamayo, and I represent the appellant Romano McCain. In this case, Mr. McCain was convicted of three felonies on the basis of evidence involving an entirely different event, an event that occurred on February 23, 2020, when he allegedly fired an assault rifle into a crowded area in upstate New York. He was not charged with doing so. He was not charged with possession of that firearm. But the evidence of this far more outrageous action clearly overshowed the evidence on the offenses charged. And in that regard, we submit that Judge D'Agostino abused her discretion by allowing it to be admitted. So, if we could focus first on the threats question in this evidence. The judge, district judge, was pretty careful in waiting and seeing what the arguments were that would develop at trial. Were you trial counsel? No, I wasn't, Your Honor. The trial counsel argues in its opening that it's just talk. It's difficult for me to see why this isn't relevant under 404B to that question. And then as to prejudice, the judge is also parsing carefully. He won't show the video, he can't use the assault rifle, and why isn't it appropriate in light of the argument made by defense counsel that it's talk and not a real threat to rely on this evidence? Because this firing had nothing to do with what he had said before, and there was no connection to those threats. Those so-called threats, the alleged threats were made the month before. They were made back in January. They were made to these two individuals who testified at trial and were named. They're referred to by initials. Right. If it's connected, it's direct evidence. I'm sorry, Your Honor, I missed you. If it's connected, if it's part of the same underlying action and crime, then it's direct evidence and you don't need a limiting instruction. Of course. I think, although I think the district judge may have, in some aspects, indicated she was I don't think the government's maintaining a direct evidence position here. So, of course, it's not connected. That's kind of by definition why we're here talking about whether it's appropriately admitted under 404B. Well, it's also the question as to whether it should have been excluded under 403, which I think are connected in 404B. But, Your Honor, if this had been something less egregious, if this had been a simple possession of a weapon as opposed to firing it, I could see that argument. I could see how it could be looked at as one part of the de facto analysis. That's a 403 argument. I mean, squarely, I think. Well, it's also a 404B argument because 404B says it has to satisfy 403. I mean, it doesn't come in for everything. I mean, this Court has said repeatedly that the inclusionary policy is not a carte blanche for everything coming in. And this is an extreme case. This is much more egregious than the allegations in the indictment. But the indictment says Excuse me, Your Honor. So, on whether the 404B evidence is more egregious, I mean, at least one of the threats here threatened the life of a small child, right? So, regardless of what your position might be on whether that's a threat or not, how, under any sort of balancing, how is a threat to the life of a small child somehow less egregious than fighting over a rifle and the rifle discharged? I don't think the evidence, with respect, Your Honor, I believe the evidence is that it wasn't fired, that it didn't discharge accidentally. I think the evidence was that it was fired into the crowd. And that, I think, is clearly more egregious. Now, I share, I'm a father, I share your concern about a threat to a child. I mean, clearly that was beyond the pale of any kind of trash talk. But this is the type of language these people engaged in. The defendant and the victims, they were doing this back and were going to do and how they were going to hurt each other. And that was the argument that this was a, I think the defense counsel used the term beef. I use the term smack talk. It's the type of language that, in polite society, we wouldn't engage in. But in this type of discussion, this is what they were doing. And the testimony of the other individuals involved in this exchange is that they didn't believe this guy. They thought he was very weak and that he was not going to do anything. And they weren't, he didn't go there and fire the weapon at them. Although one of the threatened individuals was at that scene, right? I think you're right. He was going to the scene. But I don't think there was testimony that he was physically there at the time, but I could have mistakenly heard that. He threatened Negron that he was going to attack him at the strip at noon. And your client went to the strip at noon and he had a gun. And the rifle could, if nothing else, come in, I would think, why couldn't it come in to show a constructive possession of the gun that was at the foot of the bed in his girlfriend's apartment because it indicated that he was exercising dominion over one of her firearms. Well, I don't think there's any evidence that that firearm belonged to the girlfriend or who it actually belonged to. Well, isn't there evidence, or at least in one of the texts, if I'm not mistaken, that he referred, the defendant referred to weapons that he and his girlfriend owned? Yeah, I think you're correct, Your Honor. There is one of the things saying, I think, me and my girl, we have weapons, we have guns. So he is asserting that. But I would say, Your Honor, that, as I said before, if this had been simply evidence of a possession of a firearm on a different day, that might have been a closer case. But I think the fact that this was a firing of a firearm, and this is what came out repeatedly in the course of the trial, meant this was being fired, they talked about, the judge said, and Judge Nathan pointed out before, the judge tried to cabin what could come in but couldn't really control the prosecutor. She said, you can't bring the video in. So what did he do? He had people describe the video. I mean, I think, you know, it didn't take too much imagination for somebody, I mean, I haven't looked at the video, I don't know if you have, I think we all have a pretty clear idea in our minds what that was. And having heard that there was a video, I think that was something that really crossed the line. The judge, there were objections, but the prosecutor kept arguing. The judge didn't say we were going to keep out the term assault rifle. He said, well, keep out the term AK-47, and the prosecutor has everybody testifying it's an assault rifle. Now if they were the lay witnesses, I could say, well, you know, I was a prosecutor, you can't control what lay witnesses say, they're going to say what they're going to say. Professional law enforcement witnesses, especially federal agents, they know exactly what they're saying. They don't slip in their language. They're very precise, and those are the ones who testify. Oh, I saw the video. Oh, there was a video. Oh, it was an assault rifle. And that was what brought this into that more egregious area. And to be honest, that's why I believe that the judge abused her discretion in this regard. Thank you, Mr. Schmatty. We have some time for rebuttal, and we'll hear from Ms. Schottenberg. May it please the Court, Karina Schottenberg for the United States. None of the four issues that Mr. McCain raises here warrant reversal. The 404B evidence was offered for a limited, non-propensity purpose, and the judge acted within its discretion when it balanced the probative value of that evidence against the prejudice. And I just want to note that in the government's brief on page 27 and 31, we refer to an incorrect statement of the balancing test that came from the Dupree case. And of course, the correct balancing is in Rule 403. And so we apologize for that mistake. This evidence wasn't offered for its propensity, not to show that Mr. McCain acted in accordance with character for making threats or for possessing a gun. I think, in my mind at least, it's clearer on the threats question. On possession, and I'll just read a line from the government's closing rebuttal. This is at Government Appendix 677-78. If you possess a gun five days earlier and fired it off with a crowd of people around, it's more likely that you intentionally had control over the gun at the foot of the bed in your girlfriend's house. I mean, that sounds in propensity a little bit. And how does the firing of the gun there, as opposed to possession of the gun with the girlfriend, tell us, what does that tell us about the possession of the gun however many days later? I think there's two different ways in which it tends to show the constructive possession of the revolver that's found later that week. First, the fact that he shot the gun shows that he could use it and he had the power to control it, which we would also need to show for the revolver. As your honors have already referenced, there is evidence in the record of McCain talking about jointly having possessions with his girl, with his girlfriend. And he, at the strip, arrived in the car with her and a gun, suggesting that... I mean, it's funny because they're fighting over it, which cuts the other way on that a bit. But it also shows that if the girlfriend is the owner of the gun and says you can't use it, he still can use it. I mean, if she solely owned that rifle and was trying to get away from him, he was still exercising control over it and shot it. So to the extent that we need to show that he had that same knowledge and intent with respect to the revolver, the fact that he shot a gun that the jury could infer they held in possession together tends to show that he could also control the revolver. And the second thing it shows is... But couldn't just... When you think about the 403 balancing at the end, couldn't all of those points have been made without the shooting? And then how much more probative value are you getting from the shooting for that point versus, I think, arguably, prejudice when you've got a threat in a possession case... Threat aside, when you've got a possession case when you're bringing in shooting. So with respect to the point that I just made, I think the shooting does tend to show the ability to use the gun. The judge could have sliced it a little differently and just stopped the evidence before it was shot. I think that's a discretionary call. I don't think that having differing opinions about how it could have been sliced demonstrates an abuse of discretion. But there's also a second reason that the shooting... But let me just stop you there on ability to use the gun. That's not an element of 922G, right? You don't have to demonstrate your ability to use the gun, right? No, of course not. Just with respect to constructive possession, his proximity to that revolver, the fact that he knew where it was, that's not enough. We also have to show that he knew that he could exercise dominion and control over it. And so the shooting of it, I'm positing, is a use of it or control over it. But certainly to prove 922G-8, you wouldn't have to show that he could use it. But the second reason that the shooting at the strip is relevant to the constructive possession of the revolver is because he has created a situation where he has shot at a crowd of people and then subsequently declared war on his area code. And he said that he's going to stay ready for war. He always has a gun on him. And so the fact that there is now this situation tends to show that he would have an intent or a motive to keep a loaded gun near him. He's now, a few days later, after having said, I'm going to declare war on you all and having shot at other people, he's got a reason to have a loaded gun near him. And so the fact that he has shot it days before tends to show that there would be some intent or motive to have the gun later. And again, that potentially could have been sliced differently, but I don't think that the district court abused its discretion by deciding that it didn't, particularly because the judge took multiple steps to try to mitigate the potential for unfair prejudice here. She was very deliberate about her decision. There was pre-trial litigation about this matter. She held oral argument. She reserved decision until she heard what the defenses would be at trial. In no way was this an arbitrary or a rational decision that would indicate that it should be reversed. With respect to the evidence claims that Mr. McCain makes and his challenge... Can I just ask, maybe you can't answer, but I suppose it doesn't stop me from asking. Of course. Why, I take it that it was the shooting that led to the search warrant eventually that got to the revolver. Why not charge possession related to the shooting? Even if you don't have that weapon, you've got evidence of possession. The gun was never recovered. I'm not sure this is in the record. One of the things the government would have to prove is an interstate nexus, so show that there was a gun that traveled in interstate commerce. Not totally impossible to do without the gun, but certainly very difficult. One point, unless there's questions about the cross-examination or evidence sharing sufficiency, just with respect to the sentencing challenge, counsel and I have conferred Mr. McCain was actually released from BOP custody at the end of January. He's currently under supervised release. I think there's an argument to be made that the sentencing challenge would be moved at this point because it's fairly remote and speculative if it was remanded for sentencing solely based on the guidelines issue that there would be any reduction in his term of supervised release. The guidelines for supervised release is dependent solely on the underlying classification of the felonies and not the offense level calculation. To know whether that's moved we need to know I think a lot about it. What was the range and the maximum of the supervised release term imposed? What did the judge say? The statutory maximum for the supervised release term was three years, which he got. It was a concurrent term on all three counts of conviction so it might depend on what counts of conviction were to survive if all of them do not. The guidelines range for each of the three counts was one to three years and that was just based on the fact that they were C&D felonies not because of the offense level. And it was three years concurrent for the two counts? Theoretically, the judge could go down. Often when you see mootness in these cases it's because the supervised release term is some sort of mandatory minimum and the district court is not able to go any lower. Here, there theoretically is a possibility that the judge could go down for the reasons stated in the governance brief. We don't believe there's an error here and if there was, it was harmless anyway, but in the event that the court were not to accept that argument we do think that sending it back would be only for a remote and speculative possibility of reducing the supervised release and would say that that argument is mooted by his release. Okay, thank you. Mayor, you have your three minute rebuttal time. I do have to say, Your Honor, I had that same section of the rebuttal in my notes for my rebuttal now that it did seem to me that he was talking about propensity there and that's really what this is all about. And the ex post propensity is what becomes more makes the probative value so much less. If this was I think at some point in the questions it was posed that the shooting occurred and then the threats occurred but the threats came allegedly came the month before the shooting was the following was the following month and it's after the fact. Your Honor, I also think that the point that the government was making that this could have been sliced differently is exactly our argument that Judge D'Agostino abused her discretion by not slicing it differently by not limiting the amount of this evidence that came in and allowing the prosecutor really to have carte blanche to bring in this ex post evidence without having sufficient probative value. As far as the sentencing issue goes, this came up in exchange I had with the prosecutor yesterday. I believe she's right but both of us don't know exactly why he's out now when the Bureau of Prisons says he was supposed to get out in May but I'm not arguing that that sentencing issue can't be moved. I just can't concede that from my client without speaking to her. If there are no other questions Thank you so much Thank you very much for your attention, Your Honor. Thank you both for your briefs and arguments We'll take the matter under advisement